**IT IS ORDERED as set forth below:**

**Date: December 01, 2009**

_____
**Paul W. Bonapfel**
**U.S. Bankruptcy Court Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CASE NUMBER:  A06-62966-PWB |
| | : | (Substantively Consolidated) |
| INTERNATIONAL MANAGEMENT | : | |
| ASSOCIATES, LLC, et al., | : | CHAPTER 11 |
| | : | |
| _____ | : | |
| | : | |
| IN RE: | : | MISCELLANEOUS PROCEEDING |
| | : | NO. 09-MP-601 |
| TRUSTEE'S "FOR VALUE" MOTION IN | : | |
| ADVERSARY PROCEEDINGS LISTED | : | |
| ON EXHIBIT "A", | : | |
| | : | |
| Debtor. | : | |

### CERTIFICATION OF DIRECT APPEAL OF ORDER (Doc. 38) TO U.S. COURT OF
### APPEALS FOR THE ELEVENTH CIRCUIT

Pursuant to Rule 8001(f)(4)(A) of the Federal Rules of Bankruptcy Procedure and 28

U.S.C. § 158(d)(2), this Court, acting on its own initiative, with the support of the parties, certifies

the Order annexed hereto (the "Order") (Doc. 38) for direct appeal to the United States Court of

Appeals for the Eleventh Circuit (the "Eleventh Circuit") on the basis that the Order involves a question of law that is a matter of public importance as to which there is no controlling decision by either the Eleventh Circuit or the Supreme Court of the United States, and an immediate appeal of the Order may materially advance the progress of the adversary proceedings in which the appeal is taken and the bankruptcy cases to which they relate.

In accordance with Rule 8001(f)(4)(A) and Rule 8001(f)(3)(C)(i) - (iv) which it incorporates, the Court submits the following:

**Facts necessary to understand the question presented.**

The Order addresses a common legal issue applicable to 108 adversary proceedings brought by the Plan Trustee[1] under a confirmed Chapter 11 Plan of Reorganization to recover allegedly fraudulent transfers under 11 U.S.C. § 548 and similar provisions of applicable state law pursuant to 11 U.S.C. § 544.

The material facts, as assumed for purposes of the Court's ruling on the legal issue that the Order addresses, are as follows:

(1) Kirk Wright formed the Debtors purportedly to manage and operate as hedge funds, each of which was structured either as a limited liability company or a limited partnership.

(2) In reality, Mr. Wright used the Debtors at all material times to operate a fraudulent "Ponzi" scheme whereby capital contributions made into the Debtors by later equity investors were used to knowingly pay earlier investors more than their equity investments were actually worth, including nonexistent principal and fictitious profits, to perpetuate the illusion that the Debtors had

---

[1] The Plan Trustee generally has the rights and powers of a bankruptcy trustee to avoid transfers, as more particularly explained in the Order, at pages 3-5.

2

positive investment gains, to keep existing investors from seeking recovery of their equity investments, and to induce prospective investors to make new equity investments.

(3) Each of the Investor Defendants made a capital contribution through execution of a limited liability company agreement, a limited partnership agreement, and/or a subscription agreement with one or more of the Debtors such that it held an equity interest in one or more of the Debtors denominated as a membership unit or a limited partnership interest.

(4) During the operation of the scheme, investors requested and received transfers from the Debtors, representing returns of principal and/or purported profits on their equity investments.

(5) At some time during the operation of the scheme, each Investor Defendant received one or more transfers of property from one or more of the Debtors on account of such Investor Defendant's equity interest in one or more of the Debtors.

**The legal question presented.**

The Plan Trustee filed suit against certain investors (each, an "Investor Defendant") who received transfers from one or more of the Debtors during the operation of the Ponzi scheme, in order to avoid and recover such transfers for the benefit of the bankruptcy estate and non-recovering investors, on the basis that each transfer is avoidable as an actually and/or constructively fraudulent transfer as to the Debtors' creditors.  *See* 11 U.S.C. §§ 544(b), 548(a)(1); O.C.G.A. §§ 18-2-22 *et seq.*, 18-2-70 *et seq.*  For purposes of addressing the common legal question set forth below, the Order assumes that the Plan Trustee has established his *prima facie* case against each Investor Defendant pursuant to the avoidance provisions of the Bankruptcy Code and state law fraudulent transfer statutes.

Even assuming that the Trustee has established his *prima facie* avoidance case, § 548(c)

3

of the Bankruptcy Code and state law fraudulent transfer statutes afford an affirmative defense to a fraudulent transfer claim where the defendant-transferee can establish that he acted in "good faith" and that he provided the transferor "value" in exchange for the transfer. *See, e.g.*, 11 U.S.C. § 548(c), O.C.G.A. §§ 18-2-78, 18-2-22 *et seq*. Accordingly, an Investor Defendant can establish an affirmative defense to the Trustee's avoidance claims only if the Investor Defendant can establish the required element of the affirmative defense that it provided the Debtors "value" in exchange for any transfer made on account of the Investor Defendant's equity interest, without regard to whether the Investor Defendant can satisfy its burden to show that it acted in "good faith."

At the request of the Plan Trustee and with the participation of the Investor Defendants, the Court consolidated the adversary proceedings for the limited purpose of considering the Plan Trustee's Motion for Partial Summary Judgment with regard to a common and critical legal issue. The Court assigned a "Miscellaneous Proceeding" file number for purposes of entertaining the summary judgment motion, considering responses thereto, and entering a single order applicable in all of the adversary proceedings.

The sole legal issue addressed in the Order, and therefore subject to appeal, is whether an Investor Defendant, as a holder of an equity interest (as opposed to a claim based on a debt) in a Debtor, can establish that the Investor Defendant tendered "value" to the transferor-Debtor in exchange for the cash transfer that the Investor Defendant received from the Debtor, and thereby establish a required element of the Investor Defendant's affirmative defense to the Trustee's fraudulent transfer claims, assuming that, at the time of each subject transfer: (i) the Investor Defendant tendered to the Debtor the Investor Defendant's essentially worthless equity interest in the Debtor in exchange for the transfer; and (ii) the Investor Defendant held an unasserted claim

4

against the Debtor that arose at the time the Investor Defendant originally invested as an equity

holder in the Debtor.

**The relief sought.**

The Plan Trustee in his motion for partial summary judgment sought a ruling that an

Investor Defendant cannot meet the Investor Defendant's burden to establish the affirmative

defense that the Investor Defendant provided reasonably equivalent "value" to the Debtor in

exchange for the transfer the Investor Defendant received from the Debtor; whereas the Investor

Defendants seek a ruling that an Investor Defendant can meet his burden to establish the required

element of the affirmative defense.

The Order denies the Plan Trustee's motion.  Consequently, the Plan Trustee seeks

reversal of the Order whereas the Investor Defendants seek its affirmance.

**The reasons why the appeal should be allowed and is authorized by statute or rule.**

*Jurisdiction of the Court of Appeals*

28 U.S.C. § 158(d)(2) provides, "The appropriate court of appeals shall have jurisdiction

of appeals described in the first sentence of subsection (a) if the bankruptcy court, the district court,

or the bankruptcy appellate panel involved, acting on its own motion or on the request of a party

to the judgment, order, or decree described in such first sentence, or all the appellants and appellees

(if any) acting jointly" make one of three specified certifications and if the court of appeals

authorizes the direct appeal.  The first sentence of 28 U.S.C. § 158(a) authorizes appeal from

interlocutory orders of bankruptcy judges entered in cases and proceedings referred to the

bankruptcy judges under 28 U.S.C. § 157.  As shown below, this Court makes two of the three

possible certifications, either of which is sufficient to permit the Court of Appeals to exercise

appellate jurisdiction if it authorizes the direct appeal.

*Certification of no controlling decision or matter of public importance.*

This Court certifies, pursuant to 28 U.S.C. § 158(d)(2)(A)(i), that the Order involves a question of law that is a matter of public importance as to which there is no controlling decision by the Court of Appeals for the Eleventh Circuit of the Supreme Court of the United States.

Given the spate of fraudulent investment schemes recently uncovered through the United States, undoubtedly numerous courts, trustees, receivers, and parties are currently analyzing notions of fairness and equality among defrauded investors where some investors received material transfers from the scheme while other equally defrauded investors are left financially ruined, in the specific factual circumstance where the defrauded investors held equity interests in the fraudulent scheme.

As set forth in the Order,[2] numerous courts have addressed fraudulent transfer claims where defrauded investors received pre-petition distributions from a Ponzi scheme when the recovering investors held debt-based claims against the fraudulent scheme from the outset and have determined under those facts that the recovering investors have a defense based on "value." These cases do not specifically address the issue presented here. In *In re AFI Holding, Inc.,* 525 F.3d 700 (9th Cir. 2008), the Ninth Circuit did address this question, ruling that recovering investors who held equity interests in the fraudulent scheme from the outset could assert the "value" defense. No other cases appear to have definitively addressed this question.

As demonstrated in the arguments in the parties' briefs to this Court, the parties fundamentally disagree as to whether the fact that the Investor Defendants held equity interests in

---

[2]See Order at pages 6-7.

the fraudulent scheme from the outset is a material distinction that requires an analysis different than that of the courts that have analyzed fraudulent transfer claims against defrauded recovering investors who held debt-based claims against the fraudulent scheme from the outset.

As set forth in the Order, this Court concluded that the Investor Defendants may assert the "value" defense and denied the Trustee's motion. The parties exhaustively and comprehensively reviewed case law, and the Court conducted its independent research. The Court found no controlling decision by either the Court of Appeals for the Eleventh Circuit or the Supreme Court of the United States on this issue.

The Court respectfully submits that the Eleventh Circuit's consideration of this issue, aided by the excellent advocacy of counsel on both sides, will provide considerable guidance to courts and parties on this issue, both within this Circuit and throughout the United States.

*Certification of material advancement of proceedings and cases.*

This Court certifies, pursuant to 28 U.S.C. § 158(d)(2)(A)(iii), that an immediate appeal from the Order may materially advance the progress of the proceedings in which the appeal is taken and in the bankruptcy cases to which the appeal relates. In this regard, the Court notes that the parties strongly support direct appeal of the Order to the Court of Appeals for the Eleventh Circuit because it will conserve the resources of the parties and the judiciary. A ruling by the Eleventh Circuit will resolve a fundamental question of law applicable to the claims against all of the Investor Defendants in 108 proceedings, and a definitive appellate ruling will materially shape how the parties, and therefore this Court, proceed in those matters. In this regard, the Court observes that this legal issue is a critical one that, in many instances, may well be dispositive of the outcome. In any event, appellate determination of the issue will materially advance the prospects of settlement of many cases and, therefore, avoid substantial litigation and the prospect of numerous appeals.

### Certification of Appeal

For reasons set forth above, the Court, pursuant to Rule 8001(f)(4)(A) of the Federal Rules of Bankruptcy Procedure and 28 U.S.C. § 158(d)(2), acting on its own initiative, with the support of the parties, hereby certifies the Order annexed hereto (the "Order") for direct appeal to the United States Court of Appeals for the Eleventh Circuit. Pursuant to 28 U.S.C. § 158(d)(2)(A)(i), this Court hereby certifies (1) that the Order involves a question of law that is a matter of public importance as to which there is no controlling decision by either the Eleventh Circuit or the Supreme Court of the United States, as contemplated by 28 U.S.C. § 158(d)(2)(A)(i), and (2) that an immediate appeal of the Order may materially advance the progress of the adversary proceedings in which the appeal is taken, as contemplated by 28 U.S.C. § 158(d)(2)(A)(iii). Accordingly, 28 U.S.C. § 158(d)(2)(A) provides for the Eleventh Circuit to have appellate jurisdiction if the Eleventh Circuit authorizes the direct appeal of the Order. This Court respectfully requests that the Eleventh Circuit authorize and allow direct appeal of the Order because of this Court's certifications shown above, as well as for any additional reasons set forth in any supplemental statements of the basis for certification that individual parties may appropriately file pursuant to 28 U.S.C. § 158(d)(2)(C) and Rule 8001(f)(4)(B) of the Federal Rules of Bankruptcy Procedure.

End of Order

**IT IS ORDERED as set forth below:**

**Date: December 01, 2009**

_____

**Paul W. Bonapfel**
**U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| INTERNATIONAL MANAGEMENT | : | CASE NUMBER:  A06-62966-PWB |
| ASSOCIATES, LLC, et al., | : | (Substantively Consolidated) |
| | : | |
| Debtors. | : | Chapter 11 |

----------------------------------------------------------:

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| TRUSTEE'S "FOR VALUE" MOTION IN | : | MISCELLANEOUS PROCEEDING |
| ADVERSARY PROCEEDINGS LISTED | : | NO. 09-MP-601 |
| ON EXHIBIT "A" | : | |
| | : | |

**ORDER DENYING TRUSTEE'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

William F. Perkins, the "Plan Trustee" for the Debtors in these substantively consolidated Chapter 11 cases (the "Trustee") under a Plan of Reorganization confirmed on August 27, 2008, asserts that Kirk Wright controlled and operated the Debtors as part of a "Ponzi" scheme.

The Trustee has filed 108 adversary proceedings[1] in which he seeks to recover transfers that the Debtors made to investors (the "Investor Defendants") to return their principal investments and, in some instances, to pay allegedly fictitious profits, on the ground that the payments constituted fraudulent transfers under 11 U.S.C. § 548(a)(1)(A) and (B) or under state law, exercising his avoidance powers under 11 U.S.C. § 544(b).

Presently before the Court is the Trustee's motion for partial summary judgment in which he seeks a ruling that, assuming that he can establish a *prima facie* case for the recovery of the payments as fraudulent transfers, the Investor Defendants cannot assert a defense under 11 U.S.C. § 548(c) and similar state laws because the Debtors did not receive "value" in exchange for the payments.

### "Ponzi" Schemes and Fraudulent Transfer Law in General

In a "Ponzi" scheme, the perpetrator entices victims to invest in some sort of investment vehicle with the promise of an extraordinary return on the investment, but no legitimate business or investment actually exists.  Instead, the perpetrator uses money obtained from new investors to pay "profits" to earlier ones, as well as to return principal to those who request it.[2]

Inevitably, the scheme unravels, with varying consequences to those who have invested.  Some have been able to get in and out with no loss and, indeed, have received some or all of the

---

[1]This Miscellaneous Proceeding was commenced to consolidate 108 adversary proceedings on a common legal issue.  Since that time, the Trustee has dismissed or settled with some of the Defendants.

[2]The term "Ponzi" scheme derives from the criminal financial schemes conducted by Charles Ponzi.  *See Cunningham v. Brown*, 265 U.S. 1 (1924).  For an overview of Ponzi schemes and fraudulent transfer law, *see* Mark A. McDermott*, Ponzi Schemes and the Law of Fraudulent and Preferential Transfers*, 72 Am. Bankr. L.J. 157 (1998).

2

promised return.  Others may have received some or all of their promised profits but none of their

principal investments.  The last investors may not have received anything.  Those who have not

recovered all of their principal face the prospect of receiving little or nothing from the assets that

remain because most of the money that has not been used to make payments to investors has

disappeared.

When the scheme is discovered, the company or companies through which the

perpetrator operated the investment scam often end up in bankruptcy.  In this case, the Securities

and Exchange Commission obtained the appointment of Mr. Perkins as the federal receiver for the

Debtor companies, and he sought and obtained authority to file Chapter 11 petitions.  Mr. Perkins

filed the petitions on March 16, 2006, and eventually became the Chapter 11 trustee.  Under the

provisions of the Chapter 11 Plan confirmed in these cases[3] following their substantive

consolidation,[4] Mr. Perkins as the Plan Trustee generally has the rights and responsibilities of a

trustee under the Bankruptcy Code, including the right to bring actions to avoid fraudulent transfers

under provisions of the Bankruptcy Code and state law.  During the course of the Chapter 11 cases,

a creditors' committee consisting of allegedly defrauded investors was formed, which supported

substantive consolidation of the cases and confirmation of the Chapter 11 plan.  A Plan Committee

formed pursuant to the Plan supports the Trustee's position in these adversary proceedings.

Although investors in a Ponzi scheme are victims and have not themselves engaged in

fraudulent conduct, a bankruptcy trustee under certain circumstances may recover payments made

---

[3]Order Confirming the Third Amended Trustee's Plan of Liquidation, entered August 27,
2008 in the main bankruptcy case, 06-62966-PWB, Doc. 669.

[4]Order Granting Trustee's Motion for Substantive Consolidation of the Debtors' Estates,
entered April 17, 2008 in the main bankruptcy case, 06-62966-PWB, Doc. 607.

to investors as fraudulent transfers and redistribute the amounts recovered to investors who have not been paid.   A bankruptcy trustee may, as in these proceedings, assert such fraudulent transfer claims under both federal bankruptcy law and applicable state law.[5]

Section 548(a)(1)(A) of the Bankruptcy Code, 11 U.S.C. § 548(a)(1)(A), permits a trustee to recover a transfer if the debtor made it with actual intent to hinder, delay, or defraud creditors.   Such a transfer is sometimes referred to as an "actually fraudulent" transfer. Alternatively, section 548(a)(1)(B) provides that a trustee may recover a transfer that the debtor makes if the debtor does not receive "reasonably equivalent value" in exchange for the transfer and, at the time of the transfer, the debtor was insolvent.[6]   The Trustee's recoveries under § 548 are limited to those that occurred within two years of the filing of the bankruptcy petition.

Section 544(b) permits a trustee to recover fraudulent transfers that are avoidable by an unsecured creditor under applicable state law. With regard to the issues now before the Court, the standards for recovery, and the applicable defenses, are typically the same under state fraudulent transfer laws as those in § 548.

For example, Georgia law provides that a transfer made by a debtor is fraudulent if it was made "with actual intent to hinder, delay, or defraud any creditor of the debtor," O.C.G.A. § 18-2-74(a)(1). Without regard to actual fraud, a transfer is fraudulent if the debtor made it "[w]ithout

---

[5] 11 U.S.C. § 544(b) permits a trustee to recover transfers that are avoidable under state law.

[6] Alternatively, the trustee may recover a transfer made for less than reasonably equivalent value if the debtor was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business 11 U.S.C. 548(a)(1)(B)(ii)(II-IV).

4

receiving a reasonably equivalent value in exchange for the transfer or obligation," and the debtor either was engaged in a transaction or business for which the remaining assets were unreasonably small or intended to or believed that she would incur debts beyond the ability to pay them as they came due, O.C.G.A. § 18-2-74(a)(2). Further, Georgia law provides, "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." O.C.G.A. § 18-2-75(a).

In a Ponzi scheme, the perpetrator knowingly uses money from new victims to return nonexistent principal and to pay fictitious profits to earlier investors to perpetuate the illusion of positive investment gains, to keep existing investors from seeking recovery of their investments, and to induce new victims to make new investments. The existence of the fraudulent scheme thus establishes the *debtor's* requisite fraudulent intent that is sufficient to permit recovery of payments as an actually fraudulent transfer.

Section 548(c), and similar provisions of equivalent state laws, *e.g.,* O.C.G.A. § 18-2-78(a), provide a defense for a transferee who has received the transfer "in good faith" and "for value." The concept of "value" is also material to a trustee's claim for recovery of payments as constructively fraudulent transfers because a transfer is not constructively fraudulent if it was made in exchange for "reasonably equivalent value."

### The "Value" Issue

For both of these purposes, "value" includes "satisfaction . . . of a present or antecedent

5

debt." 11 U.S.C. § 548(d)(2)(A); O.C.G.A. § 18-2-73(a).  In the context of a Ponzi scheme, the general rule is that a defrauded investor receives "value" to the extent of the principal amount of its investment but not with regard to any payments in excess of principal.  The rationale is that the investor has a claim against the debtor based on fraud for the return of the invested principal but not for fictitious, nonexistent "profits."  A transfer to the extent of the principal, therefore, satisfies the fraud claim (an antecedent debt) and, consequently, is made for "value." *See, e.g., Jobin v. McKay (In re M&L Bus. Mach. Co., Inc.)*, 84 F.3d 1330, 1340-41 (10th Cir. 1996); *Wyle v. C.H. Rider & Family (In re United Energy Corp.)*, 944 F.2d 589 (9th Cir. 1991);  *Eby v. Ashley,* 1 F.2d 971 (4th Cir. 1924).  Transfers in excess of principal, however, are not made for "value" because the investor's fraud claim does not extend to the return of the fraudulent profits. *See, e.g., Sender v. Buchanan (In re Hedged-Investments Assoc., Inc.)*, 84 F.3d 1286, 1290 (10th Cir. 1996); *United Energy Corp.*, 944 F.2d at 595 n.6.

The Trustee contends that the general rule does not properly apply in these proceedings because the investors acquired *equity* positions in the Debtors.  In this regard, the Trustee invokes the well-established principle that a transfer made to redeem an equity investment in an insolvent entity is not a transfer for value. *See, e.g., Consove v. Cohen (In re Roco Corp.)*, 701 F.2d 978, 982 (1st Cir. 1983); *Schafer v. Hammond*, 456 F.2d 15, 17-18 (10th Cir. 1972); *Lytle v. Andrews*, 34 F.2d 252 (8th Cir. 1929); *M.V. Moore & Co. v. Gilmore*, 216 F. 99, 100-01 (4th Cir. 1914); *Schaps v. Just Enough Corp. (In re Pinto Trucking Service, Inc.)*, 93 B.R. 379, 388 (Bankr. E.D. Pa. 1988); *Murphy v. Robinson (In re Ipswich Bituminous Concrete Products, Inc.*), 79 B.R. 511, 517 (Bankr. D. Mass. 1987).  The Trustee recognizes that the investors have a fraud claim but argues that the debtors made the transfers to the investors on account of their equity investments, not on account

6

of fraud claims that had not been articulated at the time of the transfers.

The Defendants assert that the general rule applies here and that no court has recognized an exception based on the form of the investment. In this regard, the Defendants observe that the Ninth Circuit expressly applied the general rule in the context of an equity investment in *In re AFI Holding, Inc.*, 525 F.3d 700 (9th Cir. 2008).

Before addressing the merits of the parties' positions, the Court explains the procedural posture of these proceedings.

## Procedural Background

The Trustee's argument raises legal issues that are common to all of the adversary proceedings. Consequently, the Trustee proposed to file a single motion for summary judgment that would address the common legal issues, with the Court's ruling to be binding on all parties in all of the adversary proceedings. The Court conducted a series of status conferences at which all defendants were invited to participate to consider appropriate procedures. Following those hearings, the Court ordered the consolidation of the adversary proceedings for the purpose of considering a motion for summary judgment to be filed by the Trustee on the common legal issues and directed that the motion and all responses be filed in this Miscellaneous Proceeding that the Court opened for that purpose.[7] Pursuant to those procedures, the Trustee filed his motion for summary judgment and a number of the defendants have responded.[8]

---

[7]Order for Consolidation of Consideration of Plan Trustee's "For Value" Motion, Establishing Briefing Schedule and Procedures, and Scheduling Hearing on Motion, entered March 23, 2009, Doc. 1. An order entered on June 15 amended the briefing schedule and changed the hearing date to September 3, 2009. Doc. 19.

[8]Responses have been filed by Defendants Aena Y. Haines (Doc. 15); James Bronner (Doc. 21); Nathaniel and Simone Bronner (Doc. 22); George Russell Curtis, Sr. Living Trust, George

7

### Statement of the Issue and Assumed Facts

The Trustee's motion seeks a ruling that, as a matter of law, an investor who made an equity investment in the debtors and received payments did not receive the payments "for value" as required to establish that element of the defense to a fraudulent transfer claim under 11 U.S.C. § 548(c) and O.C.G.A. § 18-2-78(a) or similar state laws.  In order to address this legal issue, the Court assumes, for purposes of the Trustee's motion only, that the Trustee has established a *prima facie* case for the recovery of fraudulent transfers from the defendants.  The Court's assumption of these facts for purposes of determining the central and important legal issue does not constitute a determination of any of the assumed facts.[9]  Thus, if the Trustee prevails, he must still establish

---

Russell Curtis, Sr. and Betty Curtis (Doc. 25); Lawrence Hooper (Doc. 26); David Wisneski and Michele Francine Wisneski (Doc. 27); Keith O. Burks (Doc. 28); TBC Capital, Inc. (Doc. 29); and a joint response filed by Defendants in 21 adversary proceedings including the aforementioned Defendants (Doc. 23)**.**

The Court acknowledges the professionalism of counsel for the Trustee, the Plan Committee, and the Defendants in proposing and working out these procedures for dealing with this issue.  The Court also appreciates, and commends all counsel for, the excellent advocacy in their written briefs and at oral argument.

[9]In particular, as the parties agree, this Order does not address, contemplate or make any ruling regarding any other factual or legal matter, including but not limited to whether: (i) any of the facts that this Court has assumed are established and undisputed for the purposes of this motion are in fact undisputed, such as whether during any particular period of time, IMA operated as a "Ponzi" scheme; (ii) the Trustee has established his prima facie case for avoidance of the subject transfer(s) to any particular Investor Defendant, or Investor Defendants generally; (iii) any particular Investor Defendant executed a limited liability company agreement, limited partnership agreement, and/or subscription agreement of one or more of the Debtors; (iv) any particular Investor Defendant who executed a limited liability company agreement, limited partnership agreement, and/or subscription agreement of one or more of the Debtors held an equity interest in any such Debtor(s); (v) any particular Investor Defendant, or Investor Defendants generally, can establish receipt of transfers from one or more of the Debtors in subjective or objective "good faith"; (vi) any particular Investor Defendant, or Investor Defendants generally, can establish that the Trustee's claims are barred by any applicable statutes of limitation; (vii) any particular Investor Defendant, or Investor Defendants generally, can establish any defense to the Trustee's claims for avoidance and recovery of fictitious profit distributions, except as is otherwise specifically

8

the existence of a Ponzi scheme and, for each defendant, the factual and legal bases for a determination that each transfer in question is recoverable as a fraudulent transfer, but the defendants will not have a defense under § 548(c) or corresponding state laws based on the Debtors' receipt of "value."  On the other hand, if the Trustee does not prevail, the Trustee will not be able to assert that an Investor Defendant did not receive "value" to the extent that it received payments equal to or less than the amount of its principal investment.  An adverse ruling to the Trustee will not, however, fully negate the Trustee's ability to defeat the defense, because the defense also requires that the transfer be in "good faith."

The material facts, as assumed for purposes of this ruling only, are simple.  Thus, the Court assumes: (1) That Kirk Wright formed the Debtors purportedly to manage and operate them as hedge funds, each of which was structured either as a limited liability company or a limited partnership; (2) That, in reality, Mr. Wright used the Debtors at all material times to operate a fraudulent "Ponzi" scheme whereby capital contributions made into the Debtors by later equity investors were used to knowingly pay earlier investors more than their equity investments were actually worth, including nonexistent principal and fictitious profits, to perpetuate the illusion that the Debtors had positive investment gains, to keep existing investors from seeking recovery of their equity investments, and to induce prospective investors to make new equity investments; (3) That each of the Investor Defendants made a capital contribution through execution of a limited liability company agreement, a limited partnership agreement, and/or a subscription agreement with one

---

contemplated in this Order; (viii) any particular Investor Defendant has a valid claim against the IMA estate, or whether a claim arose at the time such Investor Defendant invested with IMA or Kirk Wright; or (ix) any unique factual circumstances exist that may affect the Trustee's claims against any particular Investor Defendant.

or more of the Debtors such that it held an equity interest in one or more of the Debtors denominated as a membership unit or a limited partnership interest; (4) That, during the operation of the scheme, investors requested and received transfers from the Debtors, representing returns of principal and/or purported profits on their equity investments; and (5) That, at some time during the operation of the scheme, each Investor Defendant received one or more transfers of property from one or more of the Debtors on account of such Investor Defendant's equity interest in one or more of the Debtors. The Court emphasizes that it is not making determinations as to the existence of any of these facts.

Thus, this Order addresses only the issue of whether the Investor Defendants would be precluded, as a matter of law, from establishing the "for value" element of the defense under 11 U.S.C. § 548(c) and state law equivalents, assuming, for the purposes of this motion only, that the Trustee has established the foregoing facts.

## Discussion

As noted above, the general rule is that the victim of a Ponzi scheme has a claim for the return of the principal it invested based on fraud and that payments up to the amount of the invested principal are made in exchange for "value" because the payments satisfy the fraud claim. The Trustee asserts that the general rule does not properly apply when the victim's investment takes the form of an equity investment. Rather, the Trustee continues, the properly applicable rule is that a transfer on account of an equity interest cannot be an exchange for value. The Trustee thus distinguishes the situation here from those in which the general rule is applicable because of the equity nature of the fraudulent investments that the Debtors offered.

The case law does not make the distinction the Trustee proposes. The Trustee correctly

10

points out, however, that many of the cases establishing and applying the general rule did not involve equity investments and do not precisely address the issue he presents. This critical distinction, he contends, requires application of another established principle, that a payment by an insolvent debtor to an investor on account of an equity interest cannot be for value.

In evaluating whether the Trustee's proposed distinction is proper, it is instructive to consider the effect of application of fraudulent transfer laws in the context of a Ponzi scheme. In a Ponzi scheme, claims of creditors other than those of the scheme's victims are often nonexistent or relatively immaterial; the ensuing insolvency proceedings are not about ordinary trade creditors, whose claims are dwarfed by those of the defrauded investors. Thus, the fraudulent transfer laws, for the most part, result in an alteration of the distribution of assets among the defrauded victims. To the extent that fraudulent transfer principles permit recovery from victims who have received payment, those recoveries are redistributed among all unpaid claimants, thus promoting equality of distribution, a fundamental objective of the Bankruptcy Code and of the equitable principles on which it is based.

In this regard, the principle of equality of distribution supports a view that early participants in a Ponzi scheme who have received payments funded with the money of later defrauded victims should be required to return their payments so that all victims suffer the same ratable loss.[10] But the well-established case law, as cited earlier, has uniformly established a contrary rule that permits a defrauded investor to retain payments it receives up to the amount of

---

[10]*Cf. Eby v. Ashley,* 1 F.2d 971, 973 (4th Cir. 1924) ("It may be that exact equitable equality among the victims of [the bankrupt] could be attained only in an equitable proceeding, under which all of [his] customers would be charged with all payments made to them, and such contribution among them required as would be necessary to give each victim the same per cent of the money paid in; but that point is not before us.").

its invested principal. And that interpretation of the fraudulent transfer laws has made no distinction based on the form of the investment. *See, e.g., In re AFI Holding, Inc.*, 525 F.3d 700 (9th Cir. 2008).

Because the fraudulent transfer laws operate, in the context of a Ponzi scheme, primarily to redistribute losses among all Ponzi victims generally, the Court concludes that no principled basis exists for a different result depending on the technical form of the fraudulent investment. The well-established underlying principle, simply put, is that defrauded investors who have been paid can retain payments up to the amount of their principal. The substance, not the form, of the transactions properly governs the reallocation of assets in the aftermath of the collapse of the Ponzi scheme. The substance of a Ponzi scheme transaction is the acquisition and use of funds through a fraudulent scheme, not the particular manner in which the perpetrator carried it out. Consequently, the general rule that a Ponzi scheme victim has a fraud claim, the satisfaction of which to the extent of repayment of principal constitutes value in exchange for the transfer, applies regardless of whether the investment, in form, is debt or equity.

The principle that payment on account of an equity investment is not for "value" does not require a different result in the context of a Ponzi scheme. That principle recognizes and enforces the priority that claims of creditors for debts have over the equity interests of owners of the enterprise. It thus effectively redistributes assets from improperly paid holders of equity positions to unpaid creditors. But in a Ponzi scheme situation, the reallocation is limited to investors of the same class, that is, persons who have been fraudulently induced into unknowingly participating in the fictitious scheme. All of the participants made the same type of "investment." The result of application of the fraudulent transfer laws to effect a reallocation of assets among the

12

victims themselves does not properly turn on how they were defrauded if they were all defrauded in the same way.

The Trustee's argument in this case is appealing because it promotes equality of distribution. Adoption of his position would result in equal treatment of all victims of this particular Ponzi scheme without regard to the happenstance of when it unraveled. Indeed, the outcome the Trustee seeks arguably represents a more equitable result and should apply in all Ponzi scheme cases, regardless of whether the investments in the particular case took the form of debt or equity, in order to further equality of distribution. But that is not the general rule that the law establishes, and no sound basis exists for creating a different rule based on the equity nature of the fraudulently induced investments. For this reason, the Court will follow the ruling in *In re AFI Holding, Inc.*, 525 F.3d 700 (9th Cir. 2008).

### Conclusion

It is well-established that a defrauded Ponzi scheme investor has a claim for the return of its principal investment based on fraud and that the satisfaction of this fraud claim through transfers, at least up to the amount of principal, constitutes "value" for purposes of the defense to a fraudulent transfer claim under § 548(c) and equivalent state laws. The Court concludes that these principles apply regardless of whether the fraudulent investment was an equity investment or participation rather than debt. Consequently, the Court concludes, as a matter of law, that the Debtors received "value" for purposes of the fraudulent transfer laws to the extent that they made payments to an investor up to the amount of the principal that the investor invested.

Accordingly, the Trustee's motion for partial summary judgment is denied.

The Clerk is directed to enter this Order in this miscellaneous proceeding and docket a

copy of this Order in each adversary proceeding listed on Exhibit A.  The Clerk is directed to serve

copies of this Order upon counsel for all represented parties, and to any unrepresented party, in

each of the adversary proceedings.

**[End of Order]**

**This Order is not intended for publication.**

**EXHIBIT A**

07-06140-pwb Perkins v. Haines

07-06156-pwb Perkins v. Clay et al

07-06213-pwb Perkins v. Wright

07-06214-pwb Perkins v. Ware et al

07-06215-pwb Perkins v. Carter

07-06216-pwb Perkins v. Mair

07-06265-pwb Perkins v. Thornton

07-06267-pwb Perkins v. Louis

07-06285-pwb Perkins v. Coleman

07-06287-pwb Perkins v. Carter et al

07-06309-pwb Perkins v. Williams-Cochrane

08-06091-pwb Perkins v. Atlanta Verve, LLC et al

08-06099-pwb Perkins v. Wisneski

08-06102-pwb Perkins v. Paces Ferry Medical Group, P.C.

08-06104-pwb Perkins v. Phillips

14

08-06109-pwb Perkins v. Atwater

08-06110-pwb Perkins v. Bailey

08-06112-pwb Perkins v. Braxton

08-06113-pwb Perkins v. Burks

08-06125-pwb Perkins v. Stephen Regan, Sr.

08-06127-pwb Perkins v. Miller

08-06128-pwb Perkins v. Michelle Peoples-Wisneski

08-06130-pwb Perkins v. Bond

08-06131-pwb Perkins v. Pettit

08-06132-pwb Perkins v. Byrd

08-06133-pwb Perkins v. Robison et al

08-06134-pwb Perkins v. McDade

08-06135-pwb Perkins v. Moore

08-06137-pwb Perkins v. Hinckson

08-06138-pwb Perkins v. Hines et al

08-06139-pwb Perkins v. Jeter

08-06141-pwb Perkins v. Anderson

08-06142-pwb Perkins v. Fowler

08-06143-pwb Perkins v. Gallassero

08-06144-pwb Perkins v. Gardner et al

08-06145-pwb Perkins v. Gist

08-06147-pwb Perkins v. Hall

15

08-06148-pwb Perkins v. Herbert

08-06149-pwb Perkins v. International Medical Systems, LLC

08-06150-pwb Perkins v. Bishop

08-06153-pwb Perkins v. Spikes

08-06154-pwb Perkins v. Shelton

08-06155-pwb Perkins v. Seymour

08-06156-pwb Perkins v. Pinkney et al

08-06158-pwb Perkins v. July et al

08-06160-pwb Perkins v. Maughan et al

08-06161-pwb Perkins v. Paris

08-06162-pwb Perkins v. Peoples

08-06163-pwb Perkins v. Pinkney

08-06164-pwb Perkins v. Redfern et al

08-06166-pwb Perkins v. Wilson et al

08-06167-pwb Perkins v. Brossard et al

08-06168-pwb Perkins v. Davis

08-06169-pwb Perkins v. DeRobbio

08-06170-pwb Perkins v. Edwards

08-06171-pwb Perkins v. Edwards

08-06173-pwb Perkins v. Abdur-Rabbani

08-06174-pwb Perkins v. Elayne R. Rossi Revocable Trust

16

08-06175-pwb Perkins v. Crockett 39 Family Partners, Ltd.

08-06176-pwb Perkins v. Hall et al

08-06177-pwb Perkins v. Ricciardi

08-06178-pwb Perkins v. Braxton-Davis

08-06179-pwb Perkins v. McManners

08-06180-pwb Perkins v. Harley-Lewis

08-06181-pwb Perkins v. Ellner

08-06182-pwb Perkins v. Qudsi

08-06183-pwb Perkins v. Curtright

08-06184-pwb Perkins v. Flint

08-06185-pwb Perkins v. Atlanta Perinatal Associates, P.C. et al

08-06187-pwb Perkins v. Hooper

08-06188-pwb Perkins v. Hooper

08-06189-pwb Perkins v. Perkins

08-06191-pwb Perkins v. TBC Capital, Inc. et al

08-06195-pwb Perkins v. Hall

08-06196-pwb Perkins v. Bishop

08-06197-pwb Perkins v. Central Georgia Anesthesia Services, P.C.

08-06198-pwb Perkins v. Worthy-Pickett

08-06199-pwb Perkins v. Work

08-06201-pwb Perkins v. Whonder

17

08-06202-pwb Perkins v. Steele et al

08-06205-pwb Perkins v. Noble

08-06206-pwb Perkins v. Mt. Nebo Baptist Life Center, Inc.

08-06207-pwb Perkins v. Mair

08-06209-pwb Perkins v. Jackson

08-06214-pwb Perkins v. Eskridge et al

08-06215-pwb Perkins v. George Russell Curtis, Sr. Living Trust et al

08-06217-pwb Perkins v. Burnett

08-06218-pwb Perkins v. Bryan

08-06219-pwb Perkins v. Bronner

08-06221-pwb Perkins v. Jones

08-06223-pwb Perkins v. Champagne et al

08-06225-pwb Perkins v. David Laird Family Trust et al

08-06226-pwb Perkins v. Edwards, III

08-06227-pwb Perkins v. Roger O'Neal Family Trust et al

08-06228-pwb Perkins v. Paris

08-06229-pwb Perkins v. Perman

08-06232-pwb Perkins v. Shelton, III

08-06233-pwb Perkins v. Withers et al

08-06234-pwb Perkins v. Shelton

08-06236-pwb Perkins v. Bronner et al

18

08-06238-pwb Perkins v. Wright

08-06239-pwb Perkins v. Randolph

08-06240-pwb Perkins v. Edwards

08-06241-pwb Perkins v. Jeffries

08-06244-pwb Perkins v. Bishop

08-06249-pwb Perkins v. Perman et al

08-06250-pwb Perkins v. Reese

08-06253-pwb Perkins v. Star 6 Investments, Ltd.

**EXHIBIT A**

07-06140-pwb Perkins v. Haines

07-06156-pwb Perkins v. Clay et al

07-06213-pwb Perkins v. Wright

07-06214-pwb Perkins v. Ware et al

07-06215-pwb Perkins v. Carter

07-06216-pwb Perkins v. Mair

07-06265-pwb Perkins v. Thornton

07-06267-pwb Perkins v. Louis

07-06285-pwb Perkins v. Coleman

07-06287-pwb Perkins v. Carter et al

07-06309-pwb Perkins v. Williams-Cochrane

08-06091-pwb Perkins v. Atlanta Verve, LLC et al

08-06099-pwb Perkins v. Wisneski

08-06102-pwb Perkins v. Paces Ferry Medical Group, P.C.

08-06104-pwb Perkins v. Phillips

08-06109-pwb Perkins v. Atwater

08-06110-pwb Perkins v. Bailey

08-06112-pwb Perkins v. Braxton

08-06113-pwb Perkins v. Burks

08-06125-pwb Perkins v. Stephen Regan, Sr.

08-06127-pwb Perkins v. Miller

08-06128-pwb Perkins v. Michelle Peoples-Wisneski

08-06130-pwb Perkins v. Bond

08-06131-pwb Perkins v. Pettit

08-06132-pwb Perkins v. Byrd

08-06133-pwb Perkins v. Robison et al

08-06134-pwb Perkins v. McDade

08-06135-pwb Perkins v. Moore

08-06137-pwb Perkins v. Hinckson

08-06138-pwb Perkins v. Hines et al

08-06139-pwb Perkins v. Jeter

08-06141-pwb Perkins v. Anderson

08-06142-pwb Perkins v. Fowler

08-06143-pwb Perkins v. Gallassero

08-06144-pwb Perkins v. Gardner et al

08-06145-pwb Perkins v. Gist

08-06147-pwb Perkins v. Hall

08-06148-pwb Perkins v. Herbert

08-06149-pwb Perkins v. International Medical Systems, LLC

08-06150-pwb Perkins v. Bishop

08-06153-pwb Perkins v. Spikes

08-06154-pwb Perkins v. Shelton

08-06155-pwb Perkins v. Seymour

08-06156-pwb Perkins v. Pinkney et al

08-06158-pwb Perkins v. July et al

08-06160-pwb Perkins v. Maughan et al

08-06161-pwb Perkins v. Paris

08-06162-pwb Perkins v. Peoples

08-06163-pwb Perkins v. Pinkney

08-06164-pwb Perkins v. Redfern et al

08-06166-pwb Perkins v. Wilson et al

08-06167-pwb Perkins v. Brossard et al

08-06168-pwb Perkins v. Davis

08-06169-pwb Perkins v. DeRobbio

08-06170-pwb Perkins v. Edwards

08-06171-pwb Perkins v. Edwards

08-06173-pwb Perkins v. Abdur-Rabbani

08-06174-pwb Perkins v. Elayne R. Rossi Revocable Trust

08-06175-pwb Perkins v. Crockett 39 Family Partners, Ltd.

08-06176-pwb Perkins v. Hall et al

08-06177-pwb Perkins v. Ricciardi

08-06178-pwb Perkins v. Braxton-Davis

08-06179-pwb Perkins v. McManners

08-06180-pwb Perkins v. Harley-Lewis

08-06181-pwb Perkins v. Ellner

08-06182-pwb Perkins v. Qudsi

08-06183-pwb Perkins v. Curtright

08-06184-pwb Perkins v. Flint

08-06185-pwb Perkins v. Atlanta Perinatal Associates, P.C. et al

08-06187-pwb Perkins v. Hooper

08-06188-pwb Perkins v. Hooper

08-06189-pwb Perkins v. Perkins

08-06191-pwb Perkins v. TBC Capital, Inc. et al

08-06195-pwb Perkins v. Hall

08-06196-pwb Perkins v. Bishop

08-06197-pwb Perkins v. Central Georgia Anesthesia Services, P.C.

08-06198-pwb Perkins v. Worthy-Pickett

08-06199-pwb Perkins v. Work

08-06201-pwb Perkins v. Whonder

08-06202-pwb Perkins v. Steele et al

08-06205-pwb Perkins v. Noble

08-06206-pwb Perkins v. Mt. Nebo Baptist Life Center, Inc.

08-06207-pwb Perkins v. Mair

08-06209-pwb Perkins v. Jackson

08-06214-pwb Perkins v. Eskridge et al

08-06215-pwb Perkins v. George Russell Curtis, Sr. Living Trust et al

08-06217-pwb Perkins v. Burnett

08-06218-pwb Perkins v. Bryan

08-06219-pwb Perkins v. Bronner

08-06221-pwb Perkins v. Jones

08-06223-pwb Perkins v. Champagne et al

08-06225-pwb Perkins v. David Laird Family Trust et al

08-06226-pwb Perkins v. Edwards, III

08-06227-pwb Perkins v. Roger O'Neal Family Trust et al

08-06228-pwb Perkins v. Paris

08-06229-pwb Perkins v. Perman

08-06232-pwb Perkins v. Shelton, III

08-06233-pwb Perkins v. Withers et al

08-06234-pwb Perkins v. Shelton

08-06236-pwb Perkins v. Bronner et al

08-06238-pwb Perkins v. Wright

08-06239-pwb Perkins v. Randolph

08-06240-pwb Perkins v. Edwards

08-06241-pwb Perkins v. Jeffries

08-06244-pwb Perkins v. Bishop

08-06249-pwb Perkins v. Perman et al

08-06250-pwb Perkins v. Reese

08-06253-pwb Perkins v. Star 6 Investments, Ltd.